IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 17-58-1 |
| | : | |
| IVAN NUNEZ | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                                      **September 1, 2020**

Defendant Ivan Nunez, who is currently serving a 72-month term of incarceration, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Nunez asserts the coronavirus disease 2019 (COVID-19) pandemic and his medical conditions placing him at an increased risk of severe illness from the virus, are extraordinary and compelling circumstances justifying his release. Although the Government concedes Nunez's medical conditions present extraordinary and compelling circumstances justifying release, it opposes Nunez's motion, citing Nunez's history and characteristics and danger to the community should he be released. Upon consideration of the sentencing factors and because the Court finds Nunez is no longer a danger to the community, the Court will grant his motion, reduce his sentence to time served, and order his compassionate release.

**BACKGROUND**

On September 10, 2018, Nunez pleaded guilty to possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B); possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c); and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). On May 30, 2019, Nunez was sentenced to a total of 72 months' imprisonment followed by three years of supervised release.

Nunez is serving his sentence at the United States Penitentiary in Lewisburg, Pennsylvania. His anticipated release date is October 22, 2022.

Since Nunez's sentencing much has changed. Due to COVID-19, a novel and highly contagious respiratory virus, the United States (and the world) has confronted a rapidly changing public health crisis that has reached the scale of a global pandemic. *See WHO characterizes COVID-19 as a pandemic*, World Health Org. (Mar. 11, 2020), https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen. The virus commonly causes fever, coughing, and shortness of breath, amongst a wide range of other symptoms. *See Symptoms of Coronavirus*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last visited Sept. 1, 2020). To date, the virus has infected nearly 5,972,356 people in the United States and resulted in 182,622 deaths. *See Cases of Coronavirus Disease (COVID-19) in the U.S.*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated Aug. 31, 2020).

Some populations, including the elderly and immunocompromised, are at a higher risk of developing serious complications upon exposure to the virus. The CDC has identified people of any age who have serious underlying medical conditions as those who are also at a higher risk for severe illness. *See People with Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Sept. 1, 2020). High risk underlying medical conditions include moderate to severe asthma, chronic lung disease, serious heart conditions, severe obesity, diabetes, chronic kidney disease undergoing dialysis, liver

disease, and immunocompromised conditions from cancer treatment, smoking, bone marrow and organ transplantation, immune deficiencies, or weakening medications. *See id.*

Because COVID-19 is highly contagious and spreads primarily through person-to-person contact, its existence has dramatically affected all realms of life. Federal, state, and local public health authorities have advised certain precautions be taken to avoid exposure and prevent the spread of the virus. In Pennsylvania, government officials and public health experts recommend containing the virus by social distancing, frequently disinfecting shared surfaces, and frequently washing hands or using hand sanitizer. At the beginning of the pandemic, people were directed to stay at home unless engaging in an essential activity or providing life-sustaining or government services. Although the state is gradually reopening, people are still encouraged to stay home as much as possible, wear masks whenever in public, and avoid large gatherings.

Due to the precautions necessary to prevent the virus' spread, COVID-19 poses a unique challenge to the prison system. *See Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last updated July 22, 2020). In response to the COVID-19 pandemic, the BOP has implemented several protocols to protect the health and safety of the inmates, staff, and general public from the spread of the virus. The BOP's efforts include quarantining new inmates at the facility until they are cleared, screening inmates by health services prior to placement, suspending visits, and significantly decreasing the traffic of individuals entering the facilities. *See BOP Implementing Modified Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Sept. 1, 2020).

Despite these efforts, COVID-19 continues to infect prisons across the country. At USP Lewisburg, where Nunez is incarcerated, 85 inmates previously tested positive for the virus but have since recovered. *See COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated Aug. 31, 2020). USP Lewisburg also has eight open COVID-19 cases amongst its staff while one staff member has recovered. *See id.* There is no evidence regarding the testing procedures at USP Lewisburg, but consistent with the practices at other prisons, the Court can only assume the BOP is not engaging in mass testing of inmates at the facility. *See United States v. Pabon*, No. 17-165-1, 2020 WL 2112265, at *5 (E.D. Pa. May 4, 2020). And as a result, it is likely the presence of COVID-19 in the facility is greater than currently reported. *See id.* ("Without mass testing—and any detailed information about the current conditions at the Lewisburg Camp—the Court may be getting a false picture.").

In light of the pandemic, Nunez wrote a letter to the warden at USP Lewisburg requesting early release or home confinement. On May 11, 2020, the warden denied his request. On June 25, 2020, Nunez filed the instant motion for release from custody pursuant to 18 U.S.C. § 3582(c)(1)(A). He seeks immediate release and an effective reduction of his sentence to time served, approximately 44 months' imprisonment (at the time of filing the motion). He argues he presents an extraordinary and compelling reason to release him because his medical conditions make him vulnerable to COVID-19 while he is incarcerated at USP Lewisburg.

Nunez is 42 years old and is medically obese. He also suffers from both gout and tuberculosis. Based on Nunez's obesity, the Government concedes Nunez presents a risk factor to severe disease from COVID-19. The Government thus agrees this risk factor presents an extraordinary and compelling reason to consider Nunez's compassionate release.

The Government contends, however, relief is still not appropriate due to Nunez's criminal history. Nunez has one prior conviction for distribution of heroin and another conviction for driving under the influence. Nunez's conduct leading to the conviction in this case included possession of a firearm and a significant amount of heroin. Also, after the Indictment was filed, Nunez fled prosecution and was arrested in Mexico and returned to Philadelphia to face the charges. The Government argues these facts show Nunez is a danger to the community preventing his release.

With the consent of the parties, the Court did not hold a hearing on Nunez's motion.

**DISCUSSION**

Because the Court finds Nunez's medical conditions present an extraordinary and compelling reason to reduce his sentence, he is not a danger to the community, and the 18 U.S.C. § 3553(a) sentencing factors weigh in favor of a reduction, the Court will grant Nunez's motion. Although the Court recognizes the seriousness of Nunez's convictions and the length of time remaining on his sentence, the circumstances created by COVID-19 and Nunez's increased risk to severe illness warrant his release. As a result, the Court will reduce Nunez's sentence to time served, and will require Nunez remain in home confinement for six months as an additional condition of supervised release.

The Court may grant a sentence reduction if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable, it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The applicable policy statement is set forth at U.S.S.G. § 1B1.13, which provides, in relevant part that:

the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1)    (A)    extraordinary and compelling reasons warrant the reduction; or

         (B)    the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2)    the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3)    the reduction is consistent with this policy statement.

An application note in the commentary to the policy statement elaborates on the meaning of the phrase "extraordinary and compelling reasons." *See* U.S.S.G. § 1B1.13 cmt. n.1. The application note describes three categories of circumstances in which extraordinary and compelling reasons would exist based on the medical condition, age, or family circumstances of the defendant. *Id.* It also includes a catch-all provision that allows the Director of the BOP to determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in [the other three categories]."[1] *Id.*

---

[1] Interpreting this application note in light of recent amendments to the compassionate release statute, a majority of the district courts that have considered the issue have concluded that a *court* (not just the BOP) may independently determine whether extraordinary and compelling reasons, other than the reasons listed in the policy statement, exist in a particular case. *See United States v. Rodriguez*, No. 03-271, 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020) (collecting cases). At the time the application note was drafted, only the Director of the BOP could move for compassionate release on an inmate's behalf. In December 2018, however, "the First Step Act amended § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release, removing the BOP's exclusive 'gatekeeper' role." *Id.* at *2. The Sentencing Commission has not updated the policy statement to account for this statutory change, and the policy statement is clearly outdated in some respects, as it continues to track the former statutory language permitting a court to reduce a term of imprisonment only "[u]pon motion of the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 & cmt. n.4. Given the changes to the statute, numerous courts have found the policy statement "does not constrain [a court's] independent assessment of whether 'extraordinary

With regard to a defendant's medical condition, the application note provides that extraordinary and compelling reasons exist if

[t]he defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* cmt. n.1(A)(ii).

Applying this framework, to grant Nunez's motion, the Court must find (1) extraordinary and compelling reasons warrant the reduction, (2) Nunez is not a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g), and (3) the applicable sentencing factors under 18 U.S.C. § 3553(a) warrant the reduction.

With regard to the first factor, Nunez argues extraordinary and compelling reasons exist because of his vulnerability to COVID-19 in prison, given his underlying heath conditions, which place him at high risk of serious illness from COVID-19, and the conditions at USP Lewisburg, where the disease is present and he is at risk of contracting it. The Third Circuit Court of Appeals has noted that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v.*

---

and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)." *Rodriguez*, 2020 WL 1627331, at *4 (alteration in original) (citation omitted) (collecting cases). A minority of courts have found otherwise. *See id.* (collecting cases). Because the Government concedes that, in light of the risk of COVID-19, Nunez's medical condition meets the criteria for extraordinary and compelling reasons based on medical condition, *see* Gov't Reply Letter 1, July 29, 2020, ECF No. 115, the Court need not decide this issue.

7

*Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Moreover, Nunez's health conditions, standing alone, would not provide a basis for compassionate release as they appear to be well controlled and do not appear to present any impediment to his ability to provide self-care in the institution. *See Pabon*, 2020 WL 2112265, at *4 ("In the absence of a deadly pandemic . . . these [medical] conditions would not constitute 'extraordinary and compelling reasons.'").

In this case, however, the Government concedes that Nunez's medical conditions qualify as one of the enumerated "extraordinary and compelling reasons" under the policy statement. The Government states:

> The government acknowledges that an inmate who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19 presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," as stated in § 1B1.13 cmt. n.1(A), as, due to his condition, the defendant may be less able to protect himself against an unfavorable outcome from the disease.

Reply Letter 1, July 29, 2020, ECF No. 115. Obesity, resulting from a BMI over 30, is listed by the CDC as a risk factor for severe disease if infected with COVID-19. Nunez's BMI is recorded as 36.7 in his most recent medical records. Also, studies show high BMI and obesity are major risk factors for COVID-19 severity and hospitalizations, particularly in individuals younger than 50 years old. *See, e.g.*, Safiya Richardson et al., *Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized with COVID-19 in the New York City Area*, JAMA (Apr. 22, 2020), https://jamanetwork.com/journals/jama/fullarticle/2765184 (identifying obesity as one of the most common comorbidities amongst hospitalized COVID-19 patients); *Obesity A Major Risk Factor for COVID-19 Hospitalization*, Johns Hopkins Univ. (June 1, 2020), https://hub.jhu.edu/2020/06/01/david-kass-obesity-covid-19/.

Although Nunez's BMI alone would not constitute extraordinary and compelling circumstances, in the midst of an unwavering pandemic in which Nunez is faced with an increased risk of severe complications or death, this condition sufficiently warrants consideration for compassionate release. With the Government's concession, and the Court's independent review, this first factor is satisfied.

As to the second factor, the Court finds Nunez does not pose a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g). Section 3142(g) sets out the factors courts must consider including "the nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

There is little evidence to suggest Nunez is a danger to the community other than his conviction in this case for possession of a firearm in relation to the conduct charged. Nunez's criminal history includes only two convictions for driving under the influence and possession of heroin. Also, there is no evidence Nunez used the firearm in this case during the drug transactions or otherwise. The firearm was found in Nunez's home, which he disclosed to law enforcement upon their search of his home. *See United States v. Rodriguez*, No. 03-271, 2020 WL 1627331, at *10–11 (E.D. Pa. Apr. 1, 2020) (noting record did not show violent behavior because "[t]he firearms charges related to a gun [the defendant] disclosed to police officers when they were executing a search warrant on his home" and "[w]hile he pleaded guilty to possessing a firearm in furtherance of a drug offense, there was no evidence that he used the gun during the drug transactions or at any other time").

Since his arrest and incarceration for the charges in this case, Nunez has shown rehabilitation and the desire to become a productive member of the community. Nunez provided substantial assistance to authorities and accepted responsibility for his conduct by pleading guilty in this case. He has not had a single disciplinary infraction during pretrial detention or incarceration. He also obtained his GED while incarcerated. Nunez attempted to participate in the Residential Drug Abuse Program, although he was ineligible to participate. Considering these rehabilitation steps, Nunez is not a danger to the community as he once might have been. *See United States v. Curtis*, No. 03-533, 2020 WL 1935543, at *5 (D.D.C. Apr. 22, 2020) (noting defendant's minimal disciplinary record, attainment of a GED, and completion of a drug rehabilitation program as evidence defendant was no longer a danger to the community).

Nunez has a strong support system and ties with his community to aid in his rehabilitation. Nunez has a wife and two daughters, who all live in Philadelphia. Both of his daughters are enrolled or expected to enroll for another year at a local community college to remain closer to home. Nunez's sister and elderly mother also live nearby. Nunez's mother has undergone two heart surgeries and is diagnosed with diabetes. Upon release, Nunez anticipates living with his family and helping care for his mother. This stable support system and home to return to suggest there is a reduced likelihood that Nunez will regress into criminal or dangerous behavior. *See United States v. Ladson*, No. 04-697-1, 2020 WL 3412574, at *8–10 (E.D. Pa. June 22, 2020) (concluding defendant's strong family ties and stable home weighed against finding defendant a danger to the community).

All of these considerations taken together show Nunez is no longer a danger to the community. Nunez was convicted of serious drug charges and possession of a firearm. However, since his arrest, he has stayed on a path towards rehabilitation. Also, because Nunez will be placed

on supervised release with an additional condition of home confinement, any risk of him engaging in further criminal conduct will be sufficiently managed through the terms of supervised release. Therefore, with the steps he has already taken, a strong support system and home to return to, and effective terms of supervised release, the Court finds Nunez is not a danger to the community as discussed in § 3142(g). *See id.* at *10 (concluding defendant was not a danger to the community after considering all factors including criminal history, prison disciplinary record, family support, and terms of supervised release).

As to the third factor, the Court is persuaded the § 3553(a) factors warrant the reduction in Nunez's term of imprisonment to time served. Because § 3553(a) establishes factors to consider in initially imposing a sentence, not every factor applies here. The applicable factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

   . . . [and]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a). The statute also mandates: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)." *Id.*

As for the nature and circumstances of the offense and Nunez's history and characteristics, the Court finds this factor weighs in favor of reducing Nunez's sentence. Nunez is serving time for possession of heroin and a firearm. These are serious offenses, but as noted, Nunez has shown rehabilitation. His criminal history is minimal, including only another conviction for possession of heroin and a conviction for driving under the influence. Many of the considerations showing Nunez's lack of dangerousness, including his rehabilitation, lack of disciplinary infractions, and supportive family, also weigh in favor of a sentence reduction under § 3553(a). *See Rodriguez*, 2020 WL 1627331, at *12 (finding nonviolent criminal history and low-level drug dealing combined with rehabilitation and good conduct weighed in favor of a sentence reduction).

Turning to the need for the sentence imposed, the Court finds Nunez's time served is a sentence sufficient and not greater than necessary to serve the enumerated purposes of punishment. By the time of his release, Nunez will have served nearly 47 months in prison. He will then serve three years of supervised release, six months of which will include home confinement and location monitoring. In addition, Nunez is a convicted felon subject to numerous collateral consequences. This sentence reflects the seriousness of Nunez's crimes, promotes respect for the law, provides just punishment, affords adequate deterrence, and protects the public from further crimes of Nunez. *See Pabon*, 2020 WL 2112265, at *8 (noting defendant's sentence includes the term of imprisonment, length of supervised release, and collateral consequences, and reducing a 46-month sentence to 14 months for a serious drug crime).

As to the need for the sentence imposed, the Government has not provided any *specific* arguments to the contrary.[2] Nevertheless, the ongoing COVID-19 pandemic was unforeseen and the Court did not intend the remaining 25 months to include the risk of illness or death created by COVID-19 and Nunez's medical conditions. Nunez has also accepted responsibility, acknowledged the seriousness of his crimes, and assisted the Government in further investigations of a drug trafficking organization. Considering this, and because Nunez has already shown significant rehabilitation and has a support system that will continue to aid in that rehabilitation, the Court finds the remaining 25 months will add little deterrent effect for Nunez or protection from any further crimes. *See id.* (noting an increase in the length of a sentence does little to deter crime and acknowledging defendant's characteristics decrease possible recidivism).

The Court also notes Nunez has served over half of his total sentence. The time remaining on a defendant's sentence is an appropriate factor to consider for compassionate release. *See United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020). In cases where the remaining time on a defendant's sentence weighed against release, it typically occurred in cases where the defendant has served less than half of the original sentence. *See id.* (citing cases where defendants had served less than half of their sentence and the remaining time weighed in favor of continued incarceration). Here, that is not the case. Nunez has approximately 25 months remaining on his 72-month sentence. While 25 months is not minimal, Nunez has already served the 24-month sentence for Counts 1, 3, and 5 and is now serving his consecutive 48-month sentence for Count 4.

---

[2] The Government only argues the Court already gave significant consideration in imposing the 72-month sentence and generally states the § 3553(a) factors weigh in favor of Nunez's continued incarceration. However, for the reasons discussed, the significant change of circumstances created by COVID-19 warrants a closer look at the purposes for Nunez's punishment balanced with the risk he faces due to his medical condition and potential exposure to COVID-19.

The Court thus concludes the remaining time on Nunez's sentence does not outweigh the other factors in favor of Nunez's release.

Finally, as to whether the sentence reduces unwarranted sentence disparities, because Nunez presents a unique case in which he provided substantial assistance to authorities, shows significant rehabilitation, and faces an increased risk of severe illness, any sentence disparity is warranted. Without consideration of Nunez's assistance, he was subject to a 10-year mandatory minimum sentence. *See* 21 U.S.C. § 841(a)(1), (b)(1)(B) (setting 5-year mandatory minimum sentence for Count III); 18 U.S.C. § 924(c)(1)(A), (D) (setting 5-year mandatory minimum consecutive sentence for Count IV). However, the Government moved for, and the Court granted, a downward departure from the Guidelines range and the mandatory minimums due to Nunez's cooperation and assistance to authorities.

According to the Sentencing Commission, of those heroin traffickers who were subject to a mandatory minimum, 55.4% were relieved of that mandatory minimum. *See Quick Facts: Heroin Trafficking Offenses*, U.S. Sentencing Comm'n (June 2020), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Heroin_ FY19.pdf. Also, of the heroin traffickers who were sentenced under the Guidelines, over 30% received some kind of downward departure resulting in an average reduction of more than 50%. *See id.* Of those who received a variance, 92.9% received a below range variance resulting in 40.3% sentence reduction. *See id.* Therefore, the Court finds reducing Nunez's sentence in this case will not result in an unwarranted sentence disparity. *See Pabon*, 2020 WL 2112265, at *9 (noting statistics show many similar defendants are sentenced below the Guidelines range to conclude reducing defendant's sentence would not result in unwarranted sentencing disparities). And because Nunez is at an increased risk of severe illness due to the COVID-19 pandemic, any

disparity between his original sentence and his release after serving 47 months in prison is warranted.

The Court thus concludes the § 3553(a) factors weigh in favor of reducing Nunez's sentence.

**CONCLUSION**

In sum, due to Nunez's medical conditions, he faces an increased risk of severe illness should he contract COVID-19. He thus presents an extraordinary and compelling reason to consider his compassionate release. Nunez having presented an extraordinary and compelling reason for his compassionate release, and because the Court finds Nunez is no longer a danger to the community and the sentencing factors weigh in favor of a sentence reduction, the Court will grant Nunez's motion pursuant to § 3582(C)(1)(A). Nunez's sentence will be reduced to time served followed by three years of supervised release. Nunez's supervised release will include the conditions that he be placed on home confinement and location monitoring for the first six months of his release. Nunez will also be ordered to self-quarantine in his home for 14 days following his release.

An appropriate order follows.

BY THE COURT:

 /s/  Juan R. Sánchez
Juan R. Sánchez, C.J.